IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edmund William Lincoln, II,      :
     :
     Petitioner      :
     :
     v.      : No. 1289 C.D. 2024
     : Submitted: July 7, 2025
Pennsylvania Parole Board,      :
     :
     Respondent : 

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE WOJCIK                      FILED: September 23, 2025

Edmund William Lincoln, II (Inmate) petitions for review from the September 10, 2024 decision of the Pennsylvania Parole Board (Board) that denied his request for administrative review challenging the calculation of his parole violation maximum date. For the reasons that follow, we reverse and remand.

## BACKGROUND

On February 27, 2019, Inmate was released on parole with a maximum sentence date of August 2, 2022. Certified Record (C.R.) at 15. On October 29, 2019, Inmate was declared delinquent. C.R. at 19. A warrant to commit and detain Inmate was issued on November 30, 2019. C.R. at 20. On March 25, 2020, the Board recommitted Inmate as a technical parole violator (TPV) to serve six months

and set a parole violation maximum sentence date of September 4, 2022.[1] C.R. at 21.

On November 30, 2020, the Board made note of Inmate's criminal conviction at indictment number 120-2020 from Chester County and referred to the Board's March 25, 2020 decision recommitting Inmate as a TPV to serve six months' backtime. C.R. at 32.[2] Thereafter, on December 3, 2020, Inmate was constructively re-paroled to a state detainer with a maximum sentence date of September 4, 2022. C.R. at 27.

On June 16, 2021, Inmate was again released on parole with a maximum sentence date of December 1, 2022. C.R. at 36. On January 20, 2022, the Board declared Inmate delinquent effective January 18, 2022. C.R. at 44. A warrant to commit and detain Inmate was issued on August 15, 2022. C.R. at 45. On August 25, 2022, the Board issued a decision detaining Inmate pending disposition of pending criminal charges arising out of Chester County on August 15, 2022. C.R. at 47. Inmate was declared a TPV and recommitted to serve six months' backtime. *Id.* The decision established a parole violation maximum date of June 28, 2023.[3] C.R. at 50.

On September 26, 2022, the Board modified its August 25, 2022 decision by "removing the detain portion due to the fact that the criminal charges

---

[1] The new parole violation maximum date was established to account for the 33 days of Inmate's delinquency. C.R. at 24.

[2] The November 30, 2020 "Notice of Board Decision" states, "Note conviction out of Chester County at Indictment No. 120/2020 and take no further action as to that conviction." C.R. at 32.

[3] In reaching this decision, the Board determined that Inmate was delinquent for a total of 209 days. C.R. at 50.

did not occur while [Inmate] was under supervision." C.R. at 52. Inmate was released on parole on February 15, 2023, at the conclusion of his six-month TPV recommitment. C.R. at 53. Inmate's parole violation maximum date remained June 28, 2023. *Id.*

On April 3, 2023, the Board declared Inmate delinquent effective March 28, 2023. C.R. at 62. A warrant was issued to arrest Inmate on August 24, 2023. C.R. at 63. A warrant to commit and detain Inmate was issued on November 28, 2023. C.R. at 64. The warrant to commit and detain noted that "[a]lthough [Inmate's] original maximum sentence date was 6/28/2023, the maximum sentence is being extended due to a period of delinquency. The new maximum sentence will be computed upon recording of the [B]oard's final action." *Id.* On December 13, 2023, the Board issued a decision to detain Inmate pending disposition of criminal charges due to an arrest and pending criminal charges in Lancaster County. C.R. at 65. On January 10, 2024, the Board recommitted Inmate as a TPV to serve his term of three months and established a parole violation maximum date of February 28, 2024.[4] C.R. at 66.

On March 5, 2024, Inmate waived his right to a parole revocation hearing. C.R. at 73. On February 20, 2024, Inmate was convicted of indictment number 5236-2023. C.R. at 83. On March 20, 2024, the Board recorded a decision recommitting Inmate as a convicted parole violator (CPV) and established a parole violation maximum date of August 22, 2025. C.R. at 106-08. In reaching this decision, the Board forfeited as parole liberty credit the 243-day period between February 27, 2019, and October 28, 2019. C.R. at 103.

---

[4] In reaching this decision, the Board determined that Inmate was delinquent while on parole from March 28, 2023, through November 28, 2023 (245 days). C.R. at 68.

On April 18, 2024, the Board received an administrative remedies request from Inmate. C.R. at 115-21. On May 3, 2024, counsel filed an administrative remedies request on behalf of Inmate. C.R. at 131. On September 10, 2024, the Board replied to the administrative remedies request by reversing the March 20, 2024 Board decision with regard to Inmate's parole violation maximum date. C.R. at 114. Inmate's parole violation maximum date was recalculated to December 7, 2025. *Id.* Inmate then filed the instant petition for review with this Court.[5]

## DISCUSSION

Inmate frames his issue on appeal as whether "[the Board] contravened this [CPV's] constitutional protections against the *ex post facto* application of law by forfeiting as parole credit a period of time which had been awarded to him prior to the enactment of the statute permitting the forfeiture." Petitioner's Brief a 11. Specifically, Inmate challenges the Board's determination that he forfeited the 243 days that he spent at liberty on parole between February 27, 2019, and October 28, 2019. He posits that prior to 2012, the statute commonly referred to as the Parole Act,[6] and its successor the Prisons and Parole Code (Parole Code),[7] required that

---

[5] Our review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with the law, and whether necessary findings were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Miskovitch v. Pennsylvania Board of Probation and Parole*, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 322 (Pa. 2014).

[6] Act of August 6, 1941, P.L. 861, *as amended*, *formerly* 61 P.S. §§331.1-331.34a, repealed by the Act of August 11, 2009, P.L. 147.

[7] The Parole Act was repealed by the Act of August 11, 2009, P.L. 147, when the statute was codified into the Parole Code, 61 Pa.C.S. §§ 101-7301.

when a parolee was recommitted as a CPV, he could not receive credit on his original sentence for any time that he spent at liberty on parole. *See* Section 21.1(a) of the Parole Act, 61 P.S. §331.21a; Section 6138(a) of the Parole Code, 61 Pa. C.S. §6138(a). Conversely, when a parolee only committed a technical parole violation, the Board was precluded from making the parolee forfeit the time he spent at liberty on parole in good standing. *See* Section 21.1(b) of the Parole Act, 61 P.S. §331.21a(b); Section 6138(c) of the Parole Code, 61 Pa. C.S. §6138(c).

In 2012, the Legislature introduced amendments to the Parole Code, including to Section 6138. Pertinent here, the Legislature added subsection (a)(2.1),[8] which granted the Board discretion to award credit for time spent at liberty on parole to CPVs under certain circumstances. *See* Section 6138(a)(2.1) of the Parole Code, 61 Pa. C.S. §6138(a)(2.1).[9] Thus, Inmate notes, "[a]s of 2012, the [Parole Code] no

---

[8] Added to the Code by the Act of July 5, 2012, P.L. 1050.

[9] Subsection (a) of Section 6138 relates to CPVs. This Section provides in pertinent part:

> **(a) Convicted violators.--**
>
> (1) The board may, at its discretion, revoke the parole of a paroled offender if the offender, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the offender is convicted or found guilty by a judge or jury or to which the offender pleads guilty or nolo contendere at any time thereafter in a court of record.
>
> . . . .
>
> (2) If the offender's parole is revoked, the offender shall be recommitted to serve the remainder of the term which the offender would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole.

**(Footnote continued on next page…)**

5

longer 'clearly and unequivocally' denied street time[10] credit to all [CPVs]." Inmate's Brief at 15.

Inmate further observes that, at the time of the 2012 amendments, the Parole Code was silent as to whether the Board had the power to expunge street time credits previously given a CPV in a subsequent conviction. Ultimately, this situation was resolved in *Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401, 420 (Pa. Cmwlth. 2019), where this Court held that "when the Board recommits a CPV, it cannot revoke the credit that a parolee has been granted in a previous parole that resulted in recommitment as a TPV."[11]

---

> (2.1) The board may, in its discretion, award credit to an offender recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:
>
> > (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence or a crime listed under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders).
> >
> > (ii) The offender was recommitted under section 6143 (relating to early parole of offenders subject to Federal removal order).

61 Pa. C.S. §6138(a) (footnotes omitted).

[10] "Street time" is a term for the period of time a parolee spends at liberty on parole. *Dorsey v. Pennsylvania Board of Probation and Parole*, 854 A.2d 994, 996 n.3 (Pa. Cmwlth. 2004). We use the terms "street time" and "at liberty on parole" interchangeably.

[11] The *Penjuke* Court observed:

> In *Young* [*v. Pennsylvania Board of Probation and Parole*, 189 A.3d 16 (Pa. Cmwlth. 2018), *aff'd*, 225 A.3d 810 (Pa. 2020)], we admonished that the grant of credit is "not a decision to defer the

**(Footnote continued on next page…)**

6

Following this Court's decisions in *Young* and *Penjuke*, the Legislature passed the Act of June 30, 2021, P.L. 260, No. 59 (Act 59). There, the General Assembly amended the Parole Code to add 61 Pa. C.S. §6138(a)(2.2), which provides that "[c]redit awarded under paragraph (2.1) is subject to forfeiture under this section if an offender is subsequently recommitted as a [CPV]." The General Assembly further added language to 61 Pa. C.S. §6138(c)(2). The newly added language states that "[c]redit awarded to a [TPV] for time served on parole in good standing is subject to forfeiture if the offender is subsequently recommitted as a [CPV]." 61 Pa. C.S. §6138(c)(2).

Inmate notes that this Court's recent opinion in *Bailey v. Pennsylvania Parole Board*, 323 A.3d 259, 265 (Pa. Cmwlth. 2024), acknowledged that the

---

forfeiture of street time to a later time," *id.* at 19, and the Board cannot place sentencing credit "into an escrow account for later forfeiture." *Id.* at 21. The principles formulated and stated in *Young* are no less pertinent here. Akin to *Young*, a scenario where the "[t]he General Assembly has not granted the [ ] Board the power to revoke sentence credit it has decided to award," *id.* at 22, here the General Assembly has not entrusted the Board with the authority to revoke sentence credit granted by section 6138(c)(2) of the Parole Code. Therefore, pursuant to *Young*, the only time that remains eligible for forfeiture for a parolee recommitted as a CPV is the limited period of "time that falls between the parolee's most recent reparole and his recommitment." *Id.* at 21. Stated otherwise, in recommitting Penjuke as a CPV, the Board could not "reach back," *Brady* [*v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 262 C.D. 2018, filed August 7, 2018)], slip op. at 9, into the past periods of parole and also take away or revoke credit that was previously granted to Penjuke as a TPV—credit which, we stated in *Young*, should have "already been applied to his original sentence." 189 A.3d at 21.

*Penjuke*, 203 A.3d at 416-17.

7

statutory changes of Act 59 abrogated our holding in *Penjuke*.[12]  Inmate emphasizes, however, that the petitioner in *Bailey* did not challenge his decision on the basis that it violated the United States' and Pennsylvania Constitutions' bar against the enactment of *ex post facto* laws.  *See* U.S. Const. art. I, §9; Pa. Const. art. I, §17.[13]

Inmate states:

> In the instant matter, by a decision recorded on March 20, 2024, the Board forfeited as parole liberty credit the 243-day period [Inmate] was at liberty on parole between February 27, 2019, and October 28, 2019.  This time had been shielded from forfeiture in the initial recommitment of [Inmate] as a [TPV] on March 25, 2020.  It could not have been forfeited without the 2021 legislation adding 61 Pa. C.S.[] §6138(a)(2.2) and amending 61 Pa. C.S.[] §6138(c)(2).

---

[12] The *Bailey* Court stated:

> As noted, Petitioner relies on *Penjuke*, 203 A.3d at 420, to support his position that he is entitled to the 569 days of street time he was previously credited upon his recommitment as a TPV. In examining Section 6138 of the Parole Code, the *Penjuke* Court held: "[T]he Board lacks the statutory authority to revoke street time credit previously granted to a parolee as a TPV when it subsequently recommits the parolee as a CPV." *Id.* However, *Penjuke* was decided in 2019 and predates the June 30, 2021 amendment to Section 6138 of the Parole Code.  The then-current statutory regime as interpreted by the *Penjuke* Court did not specifically provide for forfeiture of previously-credited street time and is, therefore, inapposite to this case. As such, the Board properly revoked the credit Petitioner received for the time he spent at liberty on parole.

*Bailey*, 323 A.3d at 265 (footnote omitted).

[13] Section 9 of Article I of the United States Constitution provides that "[n]o . . . *ex post facto* [l]aw shall be passed."  U.S. CONST. art. I, § 9.  Section 17 of article I of the Pennsylvania Constitution states that "[n]o *ex post facto* law . . . shall be passed."  PA. CONST. art. I, § 17.

8

A panel of this Court recently found that the enactment of [61 Pa. C.S. §]6138(a)(2.3), a provision of Act 59 which defined "at liberty on parole" to include time confined to a community corrections center as a parolee[] did not violate the *ex post facto* clause. *El-Amin v. Pennsylvania Parole Board*, 273 A.3d 1255, 1260 (Pa. Cmwlth. 2022), [*petition for allowance of appeal denied*], 285 A.3d 323 (Pa. 2022)[.] The *ex post facto* claim was rejected because the amendment "did not change the law" but was merely a codification of a long uninterrupted line of precedent defining the term. *Id.* *El-Amin* is inapposite to the instant matter as this Court recognized in *Young* that the 2012 legislation was a watershed change in recommitment practices and rejected in *Penjuke* the continued viability of prior precedent authorizing the forfeiture of street time shielded in a prior TPV recommitment.

Inmate's Brief at 21-22.

Citing the case of *Cimaszewski v. Board of Probation and Parole*, 868 A.2d 416, 426-27 (Pa. 2005), Inmate asserts that our Supreme Court has held that retroactive changes in parole laws violate the *ex post facto* clause if they create a significant risk of prolonging the period of incarceration. Here, Inmate notes, "the law enacted on June 30, 202[1], to empower the Board to forfeit that which for [nine] years was not subject to forfeiture, prolonged [Inmate's] possible period of incarceration by 243 days." Inmate's Brief at 22. Thus, Inmate posits, his constitutional protection to be free from *ex post facto* application of law was clearly violated by the Board.

Curiously, the Board submits that its argument "will focus on the *ex*[]*post facto* claim[,]" Board's Brief at 8, yet it does nothing of the sort. Instead, the Board goes to great pains to obfuscate Inmate's relatively simple argument, morphing it in an attempt to "resurrect" this Court's holding in *Penjuke*. *See* Board's Brief at 12. This is not how we interpret Inmate's argument. Based on our review of this action, it is apparent that Inmate is raising what appears to be an issue of first

9

impression and one that was not before this Court in *Penjuke*; namely, whether the Board's application of 61 Pa. C.S. §6138(c)(2) to forfeit the 243 days of parole liberty credit that Inmate had previously received for the period between February 27, 2019, and October 28, 2019, violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. We conclude that Inmate's argument must prevail.

In *Cimaszewski*, our Supreme Court recognized that:

The *ex post facto* prohibition forbids the Congress and the States from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 . . . (1981), *citing* [sic] *Cummings v. Missouri*, . . . 71 U.S. 277, 326 . . . (1866); *see also Collins v. Youngblood*, 497 U.S. 37, 41 . . . (1990) (holding that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them) and *Garner v. Jones*, 529 U.S. 244 . . . [(2000)] (noting that one function of the *ex post facto* clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission). Two critical elements must be present for a criminal or penal law to be violative of the *ex post facto* clause: "It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver*, 450 U.S. at 29 . . . . It is the effect, not the form of the law, that determines whether it is *ex post facto*. *Weaver*, 450 U.S. at 31 . . .

Furthermore, "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." *Garner*, 529 U.S. at 250 . . . . *California Department of Corrections v. Morales*, [514 U.S. 499 (1995)] (holding that California's amended parole procedures allowing the Board of Prison Terms to decrease the frequency of parole suitability hearings under certain circumstances did not violate the *ex post facto*

10

clause). The *ex post facto* clause, however, should not be employed for the "micromanagement of an endless array of legislative adjustments to parole and sentencing procedures." *Garner*, 529 U.S. at 252 . . . (*citing* [sic] *Morales*, 514 U.S. at 508 . . . ). Instead, the states "must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Id.*

*Cimaszewski*, 868 A.2d at 422-23.

There is no dispute that when Inmate was first recommitted as a TPV on March 25, 2020, and the Board recalculated his parole violation maximum date, he received a parole liberty credit for the 243 days between February 27, 2019, the date of his initial release on parole, and October 28, 2019, the date he was declared delinquent. C.R. at 24. There is also no dispute that the Board did not have the statutory authority to forfeit credit awarded to a TPV for time served on parole in good standing upon his subsequent recommitment as a CPV until Act 59 was passed on June 30, 2021. Finally, it is undisputed that Inmate was first recommitted as a CPV on March 20, 2024, well after the passage of Act 59.

The problem presented by the undisputed facts of this case is that they suggest a scenario that this Court previously warned against: namely, the Board is reaching back into the past periods of parole that predate the June 30, 2021 amendment to Section 6138(c)(2), and removing credit that was previously granted to Inmate as a TPV-credit which had already been applied to his original sentence. This retrospective forfeiture of street time credit that was previously awarded to Inmate prior to the passage of Act 59 clearly disadvantages him as it adds the 243 days that he was previously credited with as a TPV to his parole violation maximum date, thereby increasing his punishment. We agree, therefore, that the Board contravened Inmate's constitutional protections against the *ex post facto* application the law.

11

Accordingly, the determination of the Board is reversed. This matter is remanded to the Board with the direction to reinstate the 243 days of credit to Inmate's sentence and to issue a new adjudication that makes the necessary adjustment to Inmate's maximum sentence date.

                                                      _____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Edmund William Lincoln, II, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1289 C.D. 2024 |
| | : | |
| Pennsylvania Parole Board, | : | |
| | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 23rd day of September, 2025, the September 10, 2024 determination of the Pennsylvania Parole Board (Board) is REVERSED. This matter is REMANDED to the Board with the direction to reinstate 243 days of parole liberty credit to Edmund William Lincoln, II (Inmate), and to issue a new adjudication that makes the necessary adjustment to Inmate's maximum sentence date.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge