Dennis Lee **SHEFFIELD**, Petitioner

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS** and Pennsylvania Board of Probation and Parole, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 20, 2006.

Decided March 17, 2006.

Dennis Lee Sheffield, petitioner, pro se.

John C. Manning, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent, Pennsylvania Board of Probation and Parole.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

Before this Court are the preliminary objections of the Pennsylvania Department of Corrections (DOC) and the Pennsylvania Board of Probation and Parole (Board) (collectively, Respondents) to the petition for review filed in this Court's original jurisdiction by Dennis Lee Sheffield (Petitioner).

Petitioner is incarcerated at the State Correctional Institute–Coal Township (SCI–Coal Township). Petitioner is serving an eighteen to sixty-two year aggregated sentence for rape, involuntary deviate sexual intercourse, and reckless endangerment. His minimum sentence date was January 4, 2004, and his maximum sentence date is January 4, 2048. The Board denied Petitioner parole on October 30, 2003, and again on March 29, 2005. The Board listed the following reasons for its most recent denial of parole: "your prior history of supervision failure(s)"; "your unacceptable compliance with prescribed institutional programs"; and "your need to participate in and complete additional institutional programs." Notice of Board's Decision, March 29, 2005, at 1, Exhibit "C." The Board also informed Petitioner:

You will be reviewed in or after October, 2008. At your next interview, the Board will review your file and consider: whether you have participated in a treatment program for sex offenders[;][w]hether you have received a favorable recommendation for parole from the Department of Corrections[;][and][w]hether you have main-

tained a clear conduct record and completed the Department of Corrections' prescriptive program(s).

Board Decision at 1–2, Exhibit "C."

On August 10, 2005, Petitioner petitioned for a writ of mandamus with this Court and alleged:

43. *As changes were made to the parole process and the factors that the PBPP [Board] considered, as well as the use of the parole decision making guidelines (which were revised several times from 1981–2003) and the amendments to the Parole Act of 1941, the percentage of inmates paroled decreased, from 81% in 1979–80, to 38% in 1995–96, rising slightly to 42% in 1996– 97.* (emphasis added).

44. With the changes made by the passage of the 1996 amendment to the Parole Act of 1941, as well as statutes and the parole process; factors considered for inmates classified as violent offenders (and sex offenders), those inmates whose crimes were committed in 1980 have been substantially disadvantaged and are significantly less likely to be paroled now, than in 1980.

. . . .

52. *Another factor that has led to a decrease in the percentage of paroles granted to the sub-class of violent offenders (sex offenders), was the enactment of statute 43 Pa.C.S.A. § 9718.1 (sex offender treatment) which became effective in December 2000 . . . .* (emphasis added).

53. *Prior to the enactment of the amended statute, most, if not all of the correctional institutions had a Sex Offender Program that inmates could voluntarily attend; those voluntary programs were revised, or in most cases terminated, once this amended statute became effective.* (emphasis added).

. . . .

63. *The Petitioner has refused to participate in the Sex Offender Treatment Program that was developed by the D.O.C. as prescribed by the amended statute (42 Pa.C.S.A. § 9718.1) as that program cannot be applied retroactive to the Petitioner.* (emphasis added).

64. The D.O.C. recommends participation in that program because they know that the PBPP requires sex offenders [sic] participation in and completion of that program, despite the programs non-existence prior to December 2000. (It should also be noted that this newly developed Sex Offender Treatment Program is the *only* Sex Offender program being offered and since it is being required of all sex offenders, it is being retrospectively applied to all sex offenders whose crimes were committed prior to December 2000.) (emphasis in original).

. . . .

69. *. . . . D.O.C. will not give a favorable recommendation until the Petitioner completes that program: a program that violates the ex post facto clause.* (emphasis added).

. . . .

73. Although Petitioner admits that the Parole Act of 1941 and amendments to it, do give the PBPP discretion to recommend programs for participation, nothing in the Parole Act or the amendments to it give the PBPP unlimited discretion to use such as a reason for denial of parole, especially when they do not list the programs that they are referring to and how those programs apply to the Petitioner and the crimes for which he was sentenced.

. . . .

76. . . . . Since this reason [your interview with the Hearing Examiner and/or Board Member] is now used so often,

the PBPP should not be permitted to use such a statement unless they have some type of recorded tape that they can produce to justify this reason being used.

77. *In 1995–96, the membership of the PBPP was increased from five (5) members to nine (9) members.* (emphasis added).

78. *As part of this new scrutiny of "Violent Offenders" after the 1996 amendment to the Parole Act, no longer could those classified as "Violent" be paroled with two (2) affirmative votes for parole: three (3) affirmative votes are now needed, helping to decrease the number of "Violent Offenders" granted parole.* (emphasis added).

79. *The voting requirements for sex offenders is [sic] even more pronounced: five (5) affirmative votes are necessary for parole to be granted to a sex offender.* (emphasis added).

. . . .

82. Whether the voting requirements are "procedural" or not, is irrelevant since enhancing the numbers [sic] of votes required for parole creates a more onerous punishment and therefore violates the ex post facto clause of the Constitution(s).

. . . .

86. Petitioner submits that he is entitled to be staffed for parole by the D.O.C. in accordance with the criteria it used in 1980.

87. Further, the Petitioner alleges that he is entitled to have a parole interview conducted by the PBPP, based solely on the philosophy of the Board and the criteria it considered in 1980.

Petition for Writ of Mandamus, August 10, 2005, Paragraphs Nos. 43–44, 52–53, 63–64, 69, 73, 76–79, 82, and 86–87 at 9, 11, 13–17, and 18–19.

Respondents preliminarily object in the nature of a demurrer:

28. The petition for review in this matter fails to plead sufficient facts to support Petitioner's *ex post facto claims* and therefore should be dismissed.

. . . .

30. However, where a challenge to Respondent's [Board] decision to refuse parole is based on the application of new statutory criteria, rather than on some exercise of Respondent's [Board] discretion, a mandamus action is a viable means for examining whether statutory requirements have been altered in a manner that violates the *Ex Post Facto* Clause. . . .

31. Although retroactive changes in laws governing parole may raise *ex post facto* issues in some instances, the *Ex Post Facto* Clause is not a tool for the micromanagement of parole and sentencing procedures. . . .

. . . .

40. To state an actionable ex post facto claim, vis-à-vis the 1996 amendments to the Parole Act, an inmate must allege facts showing that a change in policy, by its own terms, demonstrates a significant risk of prolonging the inmate's term of incarceration, or negatively impacts the chance the inmate has to be released on parole. . . .

. . . .

46. Petitioner, however, has not plead facts to show that an offender who is denied parole in 2005 for the reasons stated above would likely be paroled prior to 1996.

. . . .

51. Moreover, this Honorable Court has already ruled that internal procedure changes by the Board, such as voting requirements for violent offenders, do not violate the *Ex Post Fact*

Clause. *Myers v. Ridge*, 712 A.2d 791 (Pa.Commw.1997).

. . . .

53. Furthermore, Petitioner claims that the Board is retroactively applying 42 Pa.C.S. § 9718.1 in that it is allegedly requiring him to participate in sex offender treatment prior to him being eligible for parole.

. . . .

57. Notwithstanding this fact, this Honorable Court has previously concluded that the hypothetical retroactive application of § 9718.1 of the Sentencing Code would not be a violation of the *Ex Post Facto* Clause as this statute is not punitive in nature. *Evans v. Pennsylvania Board of Probation and Parole*, 820 A.2d 904 (Pa.Commw.2003).

. . . .

61. To the extent that Petitioner alleges that the reasons stated in the March 29, 2005 parole refusal are vague, arbitrary, or based on impermissible factors, he has failed to state a claim because the Court may not go behind the facially valid reasons stated for the parole refusal. . . .

62. To the extent that Petitioner alleges that the reasons stated in the March 29, 2005 parole refusal are vague, arbitrary, or based on impermissible factors, he has failed to state a claim because mandamus cannot be used to say that an agency considered improper factors, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretext. . . .

. . . .

64. To the extent that Petitioner claims a violation of his Fourteenth Amendment due process rights, there is no protected liberty interest in the granting of parole. . . .

Preliminary Objections, September 7, 2005, Paragraph Nos. 28, 30–31, 40, 46, 51, 53, 57, 61–62, and 64 at 6–8 and 10–13.

■ In considering preliminary objections, this Court must consider as true all the well-pleaded material facts set forth in the petitioner's petition and all reasonable inferences that may be drawn from those facts. *Mulholland v. Pittsburgh National Bank*, 405 Pa. 268, 271–72, 174 A.2d 861, 863 (1961). Preliminary objections will be sustained only in cases clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996).

■ Mandamus is an extraordinary writ designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy. *Princeton v. Sportswear Corp. v. Redevelopment Authority*, 460 Pa. 274, 333 A.2d 473 (1975).

## I. Whether Petitioner Has Alleged Sufficient Facts To Establish An *Ex Post Facto* Violation Concerning the 1996 Amendment To The "Parole Act"?[1]

■ Our Pennsylvania Supreme Court recently addressed the question of whether application of the 1996 amendment[2] to

---

1. Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. §§ 66.1–66.4.

2. Prior to the 1996 Amendment, Section 1 of the "Parole Act", 61 P.S. § 331.1 (1995), provided that "[t]he value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole."

the "Parole Act" violated the *ex post facto* clauses of the United States Constitution[3] and the Pennsylvania Constitution.[4] In *Cimaszewski v. Board of Probation and Parole*, 582 Pa. 27, 868 A.2d 416 (2005), our Pennsylvania Supreme Court listed the criteria necessary to establish an *ex post facto* violation. In *Cimaszewski*, Stanley Cimaszewski (Cimaszewski) had been incarcerated at the State Correctional Institution in Somerset, Pennsylvania. The board denied parole for Cimaszewski in February of 2002. The board indicated that at his next parole review, it would consider whether Cimaszewski had (1) successfully completed the substance abuse program; (2) received a favorable recommendation from the Department of Corrections; and (3) maintained a clear conduct record. The board also noted that it would consider the implications from the receipt or non-receipt of an updated status report that concerned an Immigration and Naturalization Service detainer. *Cimaszewski*, 582 Pa. at 35, n. 3 868 A.2d at 420, n. 3.

Cimaszewski petitioned for review with this Court in the nature of a mandamus action and requested this Court to compel the board to grant him parole. Cimaszewski argued that the board, through its denial of parole, had violated the *ex post facto* clause because it applied the criteria

of the 1996 amendment to the "Parole Act" to him. This Court dismissed the petition on the basis that denial of parole is not appealable. *See Cimaszewski v. Pennsylvania Board of Probation and Parole*, (No. 848 C.D.2002), filed April 9, 2002.

Cimaszewski appealed to our Pennsylvania Supreme Court. One of the issues raised was whether the application of the 1996 amendment to the "Parole Act" violated the *ex post facto* clause. Our Supreme Court reviewed recent federal cases[5] and other Pennsylvania Supreme Court cases and concluded:

> [I]t is now clear that retroactive changes in the laws governing parole *may* violate the *ex post facto* clause. . . . The controlling inquiry in determining if an *ex post facto* violation has occurred is whether retroactive application of the change in the law "creates a significant risk of prolonging . . . incarceration." *Garner [v. Jones]*, 529 U.S. [244] at 251, 120 S.Ct. 1362, 146 L.Ed.2d 236 . . . (citing *[California Department of Corrections v.] Morales*, 514 U.S. [499] at 509, 115 S.Ct. 1597, 131 L.Ed.2d 588. . . . Therefore, under Garner and Morales, the 1996 amendment may be shown to violate the *ex post facto* clause if an inmate is able to demonstrate that the 1996 amendment, as applied to him, creates a

In 1996, Section 1 of the "Parole Act", 61 P.S. § 331.1 (1996), was amended to provide that "the board shall first and foremost seek to protect the safety of the public" and "[i]n addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control, and treatment of paroled offenders."

3. Article I, Section 10 of the United States Constitution provides:

No state shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of

Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

4. Article 1, Section 17 of the Pennsylvania Constitution provides that "[n]o ex post facto law impairing the obligations of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."

5. Among the cases our Pennsylvania Supreme Court discussed was *Mickens–Thomas v. Vaughn*, 321 F.3d 374 (3d Cir.2003), *cert. denied*, 540 U.S. 875, 124 S.Ct. 229, 157 L.Ed.2d 136 (2003).

significant risk of prolonging his incarceration. . . .

Speculative and attenuated possibilities of increasing punishment, however, do not suffice. Instead, this fact-intensive inquiry must be conducted on an individual basis. . . . Thus, to state an actionable claim, an inmate must present some facts showing that the result of this change in policy, by its own terms, demonstrates a significant risk of prolonging the inmate's term of incarceration, or that it negatively impacts the chance the inmate has to be released on parole. . . . *Preliminarily, the prisoner must first plead that he can provide the requisite evidence that he faces a significant risk of an increase in punishment by application of the 1996 amendment, specifically, that under the pre–1996 Parole Act, the Board would likely have paroled the inmate. Without first pleading that such evidence exists, there is no basis for providing a prisoner with the opportunity for an evidentiary proceeding, and, without such a hearing, no basis for affording relief.*

. . . .

Here, Appellant [Cimaszewski] makes no attempt to substantiate his claims with evidence and more importantly, he offers no correlation which connects his parole denials to the changes in the law. Appellant [Cimaszewski] simply asserted that the 1996 amendment violated the *ex post facto* law when applied to him because Appellant [Cimaszewski] was convicted before 1996. Such bald assertions, however, fall short of Appellant's [Cimaszewski] burden under *Garner*

. . . . (emphasis in original and added and citations omitted).

*Cimaszewski*, 582 Pa. at 45–47, 868 A.2d at 426–28.

### A. Did The 1996 Amendment Result In An Increase In Petitioner's Punishment?

In the present controversy, the Board denied Petitioner parole based upon: 1) the recommendation of DOC; 2) Petitioner's prior history of failed supervision; 3) Petitioner's failed compliance with prescribed institutional programs; 4) Petitioner's requirement to participate in and complete additional institutional programs; and 5) the result of Petitioner's interview with the Hearing Examiner and/or Board Member.

Pursuant to *Cimaszewski*, Petitioner was required to plead sufficient facts that under the "pre–1996 Parole Act" he would have had a better chance of parole than under the 1996 amendment based upon the Board's reasons for denying him parole. Instead, Petitioner pleads that more inmates were paroled under the "pre–1996 Parole Act" than are currently paroled under the 1996 amendment.[6] Therefore, his period of incarceration was increased.

However, the Respondents point out that the 38% parole rate for the for the fiscal year 1995–1996 (the fiscal year runs from July 1, 1995, through June 30, 1996) "occurred at least six (6) months before the enactment and effective date of the 1996 amendments to the Parole Act." *See* Board's Brief in Support of Preliminary Objections at 12. Therefore, the Respondents conclude that the 26% drop in pa-

---

6. For example, Petitioner has attached certain exhibits regarding statistical data: 1) that in the 1994–1995, fiscal year sixty-four percent of inmates (6,129 inmates out of 9,645 inmates) were paroled by the Board; and 2) that in the 1995–1996, fiscal year only thirty-eight percent of inmates (3,946 inmates out of 10,302 inmates were granted parole for a twenty-six percent decrease from the previous year. *See* Petitioner's Petition for Writ of Mandamus, Exhibits J and K.

roles granted for that fiscal year cannot be contributed solely to the 1996 amendment. In fact, this Court's review of Petitioner's Exhibit L indicates that the parole rate for the following fiscal years rose continuously: 1996–1997–42%; 1998–1999–46%; 1999–2000–48%; 2000–2001–51%; and 2001–2002–52%.[7] Petition for Writ of Mandamus, Exhibit J. The 52% parole rate for 2001–2002 was an increase of 14% of inmates paroled from the 38% recorded in the 1995–1996, fiscal year.

Also, the Respondents note that in May and June of 1995, then Governor Thomas Ridge appointed three Board members to the five member Board, a 60% change in the Board's composition. *See* Board's Brief in Support of Preliminary Objections at 13 and Preliminary Objections of Respondents, September 7, 2005, Paragraphs 49 and 50 at 10 and 11. This also could have contributed to the percentage drop of paroles granted. In any event, Petitioner has failed to establish that he would have been granted parole prior to the 1996 amendment in light of his failure to adjust to prison, the severe nature of his criminal offense, and his prior criminal history.

*B. Did The Increase In The Number Of Board Members Under The 1996 Amendment Result In A Violation Of The Ex Post Facto Clause?*

Under the 1996 amendment, an inmate is required to receive five favorable recommendations for parole out of a possible nine instead of three favorable recommendations out of a possible five under the "pre–1996 Parole Act." In *Loomis v. Pennsylvania Board of Probation and Parole,* 878 A.2d 963 (Pa.Cmwlth.2005), this Court addressed this identical argument:

In [Jeffrey Wayne] Loomis' Application, he argues that his period of incarceration was lengthened as a result of the Board now requiring him to obtain five out of nine favorable recommendations from the Department of Corrections in order to be paroled when, before, only three out of five were required. This argument, however, is insufficient to support a claim for a violation of the *ex post facto* clause of either the United States or Pennsylvania Constitutions. Aside from the more important fact that Loomis is not even attempting to prove that he has met the standards of his parole, he fails to recognize that he is actually better off having to obtain five out of nine favorable recommendations rather than three out of five; five out of nine votes equates to 55% of the recommendations needed, while three out of five votes equates to 60%. Ignoring that the recommendation of the Department of Corrections, favorable or unfavorable, is not binding on the Board's decision whether to grant or refuse parole because the Board has exclusive discretion to parole individuals under its jurisdiction ... under the new Parole Rules, having to obtain five favorable recommendations is actually less of a burden for Loomis than having to obtain three favorable recommendations under the old rules, so there is no significant risk of increasing his incarceration. (citations and footnotes omitted).

*Loomis,* 878 A.2d at 966–67. Again, Petitioner has failed to establish that the increase in the number of Board members has in any way increased his risk of a longer incarceration.

## II. Whether The Retro–Application of 42 Pa.C.S. § 9718.1 Resulted In An *Ex Post Facto* Violation?

---

7. In the fiscal year 1997–1998, the parole rate was 41%. Although this was 1% lower than the 1996–1997 fiscal year, it was 3% higher than the 38% recorded for the fiscal year 1995–1996.

Section 9718.1 [8] of the Judicial Code, 42 Pa.C.S. § 9718.1, provides:

**(a) General rule.**-A person, including an offender designated as a "sexually violent predator" as defined in Section 9792 (relating to definitions), shall attend and participate in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders. . . .

. . . .

**(b) Eligibility for parole.**-For an offender required to participate in the program under subsection (a), all of the following shall apply:

(1) the offender shall not be eligible for parole unless the offender has:

(i) served the minimum term of imprisonment;

(ii) participated in the program under subsection (a); and

(iii) agreed to comply with any special conditions of parole imposed for therapy or counseling for sex offenders, including sexually violent predators.

In *Evans v. Pennsylvania Board of Probation and Parole*, 820 A.2d 904 (Pa. Cmwlth.2003), this Court addressed the issue of whether the retroactive application of 42 Pa.C.S. § 9718.1 or Act 2000–98 violated the *ex post facto* clause of the United States and Pennsylvania Constitutions:

Act 2000–98 [or 42 Pa.C.S. § 9718.1] is not a penal statute; it does not "punish." Under our Pennsylvania Supreme Court's decision in *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999), a legislative measure will be considered penal where: (1) the legislature's actual purpose is punishment; (2) the objective purpose is punishment; or (3) the effect of the statute is so harsh that "as a matter of degree" it constitutes punishment. *Id.* at 331, 733 A.2d

at 618. Under this test, Act 2000–98 [or 42 Pa.C.S. § 9718.1] cannot be construed as a penal statute.

First, the stated actual purpose of Act 2000–98 [or 42 Pa.C.S. § 9718.1] is the protection of the general public. . . .

Similarly, the objective purpose of the statute is non-punitive. Act 2000–98 [or 42 Pa.C.S. § 9718.1] protects valuable citizens and assists rehabilitative offenders to reenter society. . . .

Finally, Act 2000–98 [or 42 Pa.C.S. § 9718.1] is not so harsh in effect as to constitute punishment. . . .

*. . . To enable rehabilitation, sex offender treatment is made available. To encourage offenders to avail themselves of the opportunity for treatment, early release through parole is used as an incentive. An offender who declines treatment is subject to no greater burden than that imposed by the sentencing judge. However, an offender who accepts treatment may qualify for release before his maximum date. This result is not so harsh as to constitute punishment.*

Petitioner [Warren M. Evans] has not pleaded facts to show that Act 2000–98 [or 42 Pa.C.S. § 9718.1] figured into the Board's decision not to release him. However, Act 2000–98 [or 42 Pa.C.S. § 9718.1], on its face or as applied, does not create a significant risk of increasing the severity of his punishment. We hold, therefore, that the Petition fails to state a claim under the *Ex Post Facto* Clause of the United States or of Pennsylvania. (citations omitted and emphasis added).

*Id.* at 912–13.

In summary, Petitioner fails to allege sufficient facts to show that the 1996

8. Section 9718.1 was added by the Act of December 20, 2000, P.L. 721.

amendment and the application of 42 Pa. C.S. § 9718.1 created a significant risk of prolonging his incarceration or negatively impacted his chances to be released on parole. Petitioner fails to plead facts to establish that he would likely have been paroled under the pre–1996 "Parole Act" prior to the 1996 amendment and 42 Pa. C.S. § 9718.1.

Accordingly, this Court sustains the preliminary objections of the Respondents and dismisses Petitioner's complaint with prejudice.

### ORDER

AND NOW, this 17th day of March, 2006, the preliminary objections of the Pennsylvania Department of Corrections and the Pennsylvania Board of Probation and Parole are sustained and Dennis Lee Sheffield's petition for writ of mandamus is dismissed with prejudice.