**Warren EVANS, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 2, 2006.

Decided Aug. 16, 2006.

---

596

Warren Evans, petitioner, pro se.

John C. Manning, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Before this Court are the preliminary objections in the nature of a demurrer filed by the Pennsylvania Board of Probation and Parole (Board) in response to a pro se petition for review in the nature of a complaint in mandamus filed by Warren Evans (Petitioner), in which he alleges that the Board violated the ex post facto clause of the United States Constitution [1] and the Pennsylvania Constitution [2] by retroactively relying on the 1996 Amendment to what is commonly known as the "Parole Act" to deny his parole.[3] For the reasons that follow, we hereby sustain the Board's preliminary objections.

Petitioner was found guilty of robbery, involuntary deviate sexual intercourse and possession of an instrument of crime. He was sentenced to a total term of ten years and five months (minimum) to forty years and ten months (maximum). His minimum sentence expired on August 23, 1991, and his maximum sentence expires on January 23, 2022. On May 29, 1991, Petitioner was granted parole. On June 21, 1995, Petitioner was arrested for three technical parole violations (two counts of positive

1. Article I, Section 10 of the United States Constitution provides:
 No state shall enter into any Treaty, Alliance, or Confederation; grant letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, **ex post facto Law,** or Law impairing the Obligation of Contracts, or grant any Title of Nobility. (Emphasis added.)

2. Article 1, Section 17 of the Pennsylvania Constitution provides that "[n]o ex post facto law nor any law impairing the obligations of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."

3. Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. §§ 331.1–331.34a. Prior to the 1996

Amendment, Section 1 of the Parole Act, 61 P.S. § 331.1 (1995), provided that "[t]he value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole."

In 1996, Section 1 of the Parole Act, 61 P.S. § 331.1 (1996), was amended to provide that "the board shall first and foremost seek to protect the safety of the public" and, "[i]n addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control, and treatment of paroled offenders."

urine specimen and one count of failure to provide a urine specimen to the Board). On September 26, 1995, he was ordered to serve 15 months backtime for the technical parole violations. Since that time, Petitioner has remained incarcerated and has been denied re-parole on six occasions. In 1996, the Parole Act of August 6, 1941 was amended. Changes included increasing the number of Board members, increasing the number of affirmative votes necessary to affirm re-parole, and enhancing Board scrutiny of violent offenders and sex offenders to insure that parole is proper.

▬▬ Petitioner argues that the Board's retroactive application of the 1996 Amendment to the Parole Act to his situation violates the ex post facto clause of both the Pennsylvania and United States Constitutions. He argues that this retroactive application has disadvantaged him and has substantially increased his chance of serving a longer period of incarceration. Petitioner does not allege any facts to substantiate this claim. However, he offers an exhibit[4] (EXH. 2) attached to his Petition for Writ of Mandamus in order to statistically demonstrate a decline in parole rates after the passage of the 1996 Amendment to the Parole Act. "[From] EXH. 2, the court can see that well after the enactment of the 1996 Amendment to the Parole Act of August 6, 1941, those classified as violent offenders are granted parole at a FAR LESS percentage than those classified as non-violent." (Pet. for Writ of Mandamus ¶ 30.) In his Petition

for Writ of Mandamus, Petitioner also makes the following claims:

20. On page 13 of EXH. 2, the Court can see that during the fiscal year 1994–95, the percentage of those released on parole was 64%.

21. It was during this fiscal year (1994–95) that the petitioner was arrested by the PBPP and charged with the technical parole violations.

22. The Petitioner was first interviewed for re-parole in or about September, 1996 (fiscal year 1995–96).

23. On page 13 of EXH. 2, the court can see that during that fiscal year (1995–96) and, at least in part because of the outcry over the "Simon" parole, the percentage of those paroled for that 1995–96 fiscal year dropped to 38%.

24. Also on page 13 of EXH. 2, the court can see that in the fiscal year in which the petitioner was first interviewed for re-parole (fiscal year 1996–97) the percentage of paroles granted stood at 42%, 35% **LESS** than the 77% paroled in 1991.

(Pet. for Writ of Mandamus ¶¶ 20–24.) Moreover, Petitioner asserts that he has now served more than 10 years following the technical parole violations *only* because the Board is applying factors to their consideration of his parole that did not exist prior to 1996, nor have anything to do with the violations that had him returned to prison as a technical parole violator. He maintains that this Court should remand the matter back to the Board with instructions for them to re-

---

4. The exhibit offered by Petitioner consists of five charts, on two pages, presented by the Board of Probation and Parole in front of a Pennsylvania House Judiciary Committee Informational Hearing on February 5, 2003. It appears that these two pages of charts were part of a larger document presented by the Board to the House Judiciary Committee. The titles of the charts are as follows:

1. Parole Decisions: Twelve Year Review
2. Total Considered and Percent Paroled over Ten Years
3. Parole Rate Semi Annual Comparison
4. Minimum Cases–Violent Offense Parole Rates
5. Review Cases–Violent Offense Parole Rates

(Pet. for Writ of Mandamus, EXH. 2.)

interview Petitioner for re-parole, using only the factors they would have used for technical violators and giving no consideration to any matters that were enacted and contained within the 1996 Amendments to the Parole Act.[5]

 In its Brief in Support of Preliminary Objections, the Board contends that Petitioner has not alleged sufficient facts to constitute an ex post facto violation based on the Board's refusal to parole him.[6]

 Our Supreme Court recently set forth the analysis to use when determining whether an inmate has presented an actionable claim that retroactive application of the 1996 Amendment to the Parole Act violates the ex post facto clause. In that case, *Cimaszewski v. Pennsylvania Board of Probation and Parole*, 582 Pa. 27, 868 A.2d 416 (2005), our Supreme Court provides, in relevant part:

[I]t is now clear that retroactive changes in the laws governing parole **may** violate the *ex post facto* clause. The controlling inquiry in determining if an *ex post facto* violation has occurred is **whether retroactive application of the change in the law "creates a significant risk of prolonging ... incarceration."**

. . .

Speculative and attenuated possibilities of increasing punishment, however, do not suffice. Instead, this fact-intensive inquiry must be conducted on an individual basis. . . . Thus, to state an actionable claim, an inmate must present some facts showing that the result of this change in policy, by its own terms, demonstrates a significant risk of prolonging the inmate's term of incarceration, or that it negatively impacts the chance the inmate has to be released on parole. **Preliminarily, the prisoner must first plead that he can provide the requisite evidence that he faces a significant risk of an increase in punishment by application of the 1996 amendment, specifically, that under the pre–1996 Parole Act, the Board would likely have paroled the inmate. Without first pleading that such evidence exists, there is no basis for providing a prisoner with the opportunity for an evidentiary proceeding, and, without such a hearing, no basis for affording relief.**

*Id.*, 582 Pa. at 45–46, 868 A.2d at 426–27 (citations omitted) (emphasis added and in original).

**5.** While an appellant is not entitled to appellate review of a Board decision denying parole, he may be entitled to pursue allegations of constitutional violations against the Board through a writ of mandamus. *Rogers v. Board of Probation and Parole*, 555 Pa. 285, 724 A.2d 319 (1999). Mandamus is an extraordinary remedy which is available to compel the Board to conduct a hearing or apply the correct law. *Bronson v. Board of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied*, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981). It will only be granted to compel performance of a ministerial duty where the plaintiff establishes a clear legal right to relief and a corresponding duty to act by the defendant. *Waters v. Department of Corrections*, 97 Pa.Cmwlth. 283, 509 A.2d

430 (1986). Mandamus is not proper to establish legal rights, but is only appropriately used to enforce those rights which have already been established. *Rummings v. Pennsylvania Board of Probation and Parole*, 814 A.2d 795 (Pa.Cmwlth.2002).

**6.** In considering preliminary objections, our Court must consider, as true, all the well-pleaded material facts set forth in Petitioner's petition and make all reasonable inferences that may be drawn from those facts. *Werner v. Zazyczny*, 545 Pa. 570, 578, 681 A.2d 1331, 1335 (1996). Preliminary objections will be sustained only in cases clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Id.*

This Court recently applied the analysis in *Cimaszewski* to a case similar to the one at bar in *Sheffield v. Department of Corrections,* 894 A.2d 836 (Pa.Cmwlth.2006). In *Sheffield,* we held that the petitioner failed to plead sufficient evidence in support of his argument that he faced a significant risk of an increase in punishment by application of the amended Parole Act to his parole decision. The petitioner in *Sheffield* included extensive pleadings in support of his ex post facto claim, including data about parole rates before and after the 1996 Amendment. The petitioner in *Sheffield* also provided data in support of his argument that an increase in the number of board members under the 1996 Amendment resulted in a lesser chance for his parole. Despite pleadings of at least sixty-four numbered paragraphs and numerous exhibits, we determined that the petitioner failed to substantiate his ex post facto claim by proving that the 1996 Amendment to the Parole Act created a "significant risk of an increased punishment." *Cimaszewski.*

In the present case, Petitioner has pled no facts and no evidence which would establish that he faced "a significant risk of an increase in punishment by application of the 1996 amendment," or that "under the pre–1996 Parole Act, the Board would likely have paroled" him. *Cimaszewski,* 582 Pa. at 45–46, 868 A.2d at 427. As in *Sheffield,* Petitioner merely cites to statistical data regarding parole rates before and after the passage of the 1996 Amendment to the Parole Act. Additionally, Petitioner has not asserted any nexus between the 1996 Amendment to the Parole Act and the Board's failure to parole him. Essentially, Petitioner concludes, without more, that because he was convicted prior to 1996, the Board must have violated the ex post facto clause when it failed to parole him. This is not sufficient. Mere assertions of an ex post facto application of law and statistical data regarding parole denial rates are insufficient to prove the same under our case law. In failing to meet the requirements of *Cimaszewski,* Petitioner's Petition for Review fails to substantiate an ex post facto claim.

Furthermore, Petitioner's claim, that the repeated denials of re-parole were for reasons that had nothing to do with his technical parole violations, is irrelevant. It is within the Board's discretion whether or not to grant him the privilege of parole, and their reasons for granting or denying it need not relate to the reasons for the revocation of his parole. *Mickens–Thomas v. Pa. Bd. of Prob. and Parole,* 699 A.2d 792 (Pa.Cmwlth.1997). Petitioner can remain incarcerated through his maximum sentence at the discretion of the Board based on his original conviction. *Id.*

Accordingly, we sustain the Board's preliminary objections.

### ORDER

**NOW,** August 16, 2006, Respondent's preliminary objections in the above-captioned matter are SUSTAINED, and Petitioner's Petition for Review is DISMISSED WITH PREJUDICE.